IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TONI LYNN YEAGER                                                                                    PLAINTIFF

v.                                        Civil No. 5:22-CV-05196-TLB-CDC

SERGEANT MARIAH CARRIER,                                                                     DEFENDANTS
CORPORAL CARLEY EAST, SERGEANT
WILL FOSTER, DEPUTY KELLIE
GRAMMER and DEPUTY HANNAH
FRASER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

## I. BACKGROUND

Plaintiff filed her Complaint on September 21, 2022. (ECF No. 1). Plaintiff is incarcerated in the Washington County Detention Center ("WCDC"), and indicates she is serving a 90-day parole violation and is also a pretrial detainee. (*Id*. at 2). For her first claim, Plaintiff alleges that she contracted COVID-19 while in WCDC,[2] and Defendant Carrier "made

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").
[2] Plaintiff does not identify any actions or inactions on the part of any named Defendant which contributed to her contracting COVID-19. The Court will, therefore, interpret Claim One to address the quarantine conditions alone.

1

the executive decision"³ to place her and nine other female inmates to the "courtroom hallway" of the facility. (*Id*. at 8). The Court will infer that the female inmates were moved to this area for COVID-19 quarantine purposes. Plaintiff alleges she was kept there for two days, from August 17, 2022, through August 19, 2022. (*Id*. at 8). She alleges that, during these two days, she had to sleep on a mat on the "filthy" floor, she was served only cold food, and dinner was not served until 8:00 pm on August 18, 2022. (*Id*. at 8-9). Plaintiff also alleges that, in addition to the meal being served late that day, some inmates were given "officer trays," while other inmates received "normal jail inmate trays." She believes this was discriminatory. (*Id*. at 9). She alleges Defendants Foster and East were responsible for the late dinner and discriminatory distribution of meal trays. (*Id*.). She proceeds against all three Defendants for this claim in their official and individual capacities. (*Id*.).

For her second claim, Plaintiff alleges she and the other COVID-positive female inmates were moved to the W/C2 block and kept there from August 19, 2022, through August 27, 2022. (*Id*. at 10). Plaintiff alleges that this block typically houses male inmates, and the female inmates were supervised by male guards. Despite Plaintiff's repeated requests to Defendants Grammer and Fraser, as well as filed grievances, shower curtains were not installed in the showers of the W/C2 block. As a result, Plaintiff alleges "my whole top half exposed every time" she took a shower. (*Id*.). Plaintiff proceeds against Defendant Grammer and Fraser for this claim in their official and individual capacities. (*Id*. at 11).

For her third claim, Plaintiff alleges that on August 20, 2022, her face mask "broke," and Defendants Fraser and Grammer refused to provide her with a new mask. (*Id*. at 12). Plaintiff

---

³ Plaintiff states that she was not able to get the name of the person who made the "executive decision" to house the female inmates in the hallway. Instead, she named Defendant Carrier, who physically escorted them to the location. (*Id*. at 6-7).

2

proceeds against the two Defendants for this claim in their official and individual capacities. (*Id*.).

For her fourth claim, Plaintiff alleges that she was denied inmate Trustee status by Defendant Fraser from July 27, 2022, through September 2, 2022. (*Id*. at 13). Plaintiff alleges she was told by an unnamed corporal that there was a note in her inmate file indicating that she "was not allowed trustee status due to Dep. Fraser stating that that she did not believe my issue w/ this inmate to be real & that 'I was just playing musical blocks.'" (*Id*. at 13). Plaintiff believes this refers to her earlier request to be transferred to another block because she did not feel safe with another inmate in the block where she was housed. (*Id*.). Plaintiff alleges that her stay at WCDC has been made more difficult because she has been denied Trustee status based on Defendant Fraser's false claims. Plaintiff proceeds against Defendant Fraser in her official and individual capacities. (*Id*. at 14).

Plaintiff seeks compensatory damages for mental, emotional, and physical suffering. (*Id*. at 15). Plaintiff identifies her physical suffering as being "COVID pos." and "sleeping on floor." Plaintiff states various monetary estimates of damages, but also states she would accept having all charges against her dropped as compensation for her suffering.

## II. LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants

3

rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  ANALYSIS

#### A.  Claim One

Plaintiff failed to state any plausible conditions of confinement claims based on her allegations that she had to sleep on a mat on the floor for two days, received only cold food to eat for two days, her dinner was served late for one meal, and some inmates received officer trays rather than inmate trays for the late meal.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cty. of Sacramento v. Lewis,* 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment prohibits punishments

that deprive inmates of the minimal civilized measure of life's necessities. *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton,* 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz,* 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels,* 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "[T]he severity and the duration of the challenged conditions must be evaluated to determine whether the Eighth Amendment was violated. *Dunahue v. Kelley*, 2:18-CV-103-DPM, 2022 WL 903365, at *1 (E.D. Ark. Mar. 28, 2022) (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam)). As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation. This injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Here, Plaintiff's allegations cover a total of two days. Given the extremely short duration of her claim, Plaintiff's allegations are simply insufficient. *See e.g., Stickley v. Byrd*, 703 F.3d

421, 424 (8th Cir. 2013) (no constitutional deprivation where pretrial detainee exhausted his weekly allotment of toilet paper each week before week's end); *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (no constitutional violation where pretrial detainee was subjected to overflowed toilet for four days); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (inmate's deprivation of clothes, running water, hygiene supplies, blanket and mattress for four days did not violate the Eighth Amendment); *Huggins v. Brassell*, No. 5:08-cv00216, 2009 WL 856869, *3 (E.D. Ark. March 27, 2009) ("If Plaintiffs were denied a change of clothes, clean underwear, socks, towels, and soap, such a denial, for the limited days described, does not amount to a constitutional violation").

Nor does Plaintiff have any constitutional right to hot food. "Constitutional standards require only that prison authorities provide an inmate with well-balanced meals, containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal quotation marks and citation omitted). The provision of only cold food does not violate the Constitution. *See Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) ("We agree with the district court that Brown-El's claim that his constitutional rights were violated when he was served cold food is frivolous.").

Finally, Plaintiff makes no allegation that she suffered any injury, *de minimis* or otherwise, as a result of the two days of COVID-19 quarantine in the hallway.

No plausible claim concerning Plaintiff's conditions of confinement is stated.

### B.     Claim Two

Plaintiff failed to state a plausible claim based on her allegations that male guards were able to see her torso when she showered for the eight days she was housed, along with the other COVID-positive female inmates, in the W/C2 block.

The United States Supreme Court has long recognized that a "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527-28 (1984); *see Bell v. Wolfish,* 441 U.S. 520, 537 (1979) ("Loss of freedom of choice and privacy are inherent incidents of confinement.").

The Eighth Circuit also has repeatedly held that prisoners do not have a constitutionally protected privacy right preventing them from being observed by guards of the opposite sex. *Bell v. Conrad,* 749 F.App'x. 490, 491 (8th Cir. 2019) (affirming preservice dismissal and holding that "prison officials did not violate a clearly established constitutional right by allowing female guards to monitor Bell through surveillance cameras"); *Hill v. McKinley*, 311 F.3d 899, 903 (8th Cir. 2002) (holding that a female detainee's constitutional rights were not violated when she was required to undress in front of a male guard); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) ("Whatever minimal intrusions on an inmate's privacy may result from [opposite-sex] surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities."); *see also Robinson v. Boulier,* 121 F.3d 713, at *1-2 (8th Cir. 1997) (holding that no constitutional violation arose from female officers' "panoramic view" of male inmates' shower and toilet areas).

Thus, Plaintiff had no constitutionally protected privacy right preventing her from being observed by guards of the opposite sex while she showered. No plausible claim concerning Plaintiff's privacy right is stated.

### C.     Claim Three

Plaintiff failed to state a plausible conditions of confinement claim based on the allegation that she was denied a replacement face mask to replace her broken mask on August 20, 2022.

The alleged failure to immediately replace Plaintiff's face mask on one occasion is, at most, negligent.  The law is clear: negligence is not actionable under § 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Estelle v. Gamble*, 429 U.S. 97 (1976).  See also *Abdulaziz/Askew v. Payne*, No. 4:20-cv-529-JM-BD, 2020 WL 7083487, at *2 (E.D. Ark. Nov. 18, 2020) (prisoner's allegation that he was not given a mask to prevent him from contracting Covid-19 was at most negligence), *Report and Recommendation adopted*, 2020 WL 7083227 (E.D. Ark. Dec. 3, 2020); *Tate v. Arkansas Department of Corrections*, 4:20-cv-558-BSM-BD, 2020 WL 7367864 at *9-10 (E.D. Ark. Dec. 15, 2020) (prisoner's allegation that ADC officials acted negligently in failing to prevent the spread of Covid-19 was insufficient to state a deliberate indifference claim), *Report and Recommendation adopted*, 2020 WL 7367864 (E.D. Ark. Dec. 15, 2020).

Further, Plaintiff makes no allegation that she suffered any injury, *de minimis* or otherwise, as a result of the failure to replace her mask on August 20, 2022.

No plausible claim is stated concerning Plaintiff's condition of confinement claim for the failure to replace her face mask.

### D.     Claim Four

Plaintiff failed to state a plausible claim based on her allegation that Defendant Fraser prevented her from attaining Trustee status for just under 5 weeks by placing a note in Plaintiff's inmate file questioning the veracity of her block transfer request.  Plaintiff does not have a constitutional right to a particular prison job or classification.  *See Sanders v. Norris*, 153

F.App'x. 403, 404 (8th Cir. 2005) (unpublished) (citing *Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (per curiam) (prisoners do not have a constitutional right to a particular prison job); *Hartsfield v. Dep't of Corr.,* 107 F.App'x. 695, 696 (8th Cir. 2003) (unpublished per curiam) (no liberty interests in particular classification)). No plausible claim is stated.[4]

## IV. CONCLUSION

For these reasons, it is recommended that: (1) the case be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (2) Plaintiff/Petitioner is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the Clerk is directed to place a § 1915(g) strike flag on the case for future judicial consideration; and (3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **24th day of October 2022**.

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court can find no precedent indicating that a mere transfer request is a protected First Amendment activity. Even assuming it was a protected activity, the denial of Trustee status for a short period of time appears to be nothing more than an unactionable *de minimis* injury which would not deter a person of ordinary firmness from exercising their First Amendment rights. *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (citing *Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir.2003) ("The ordinary-firmness test is . . .designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment."). Plaintiff does not allege, and her Complaint does not reflect, that she was chilled from exercising her First Amendment rights in WCDC. Instead, she alleges she filed multiple requests and grievances concerning her claims.